UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURKHARD HABECKER,

    Applicant,

v.                                                   CASE NO. 8:13-cv-1957-T-23TGW

SECRETARY, Department of Corrections,

    Respondent.
                                             /

## **O R D E R**

Burkhard Habecker applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for two counts of attempted first degree murder, for which convictions Habecker is imprisoned for two concurrent thirty-year terms. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 13) The respondent argues that some grounds are not fully exhausted and, as a consequence, are procedurally barred from federal review. The respondent admits the application's timeliness. (Response at 10, Doc. 10)

## **FACTS**[1]

With the intent to retrieve some of his belongings, Habecker went to the apartment of his ex-girlfriend, Ms. Boudro, who was inside with a male companion.

---

[1] This summary of the facts derives from the appendices, which is the record of the state court proceedings. (Doc. 13).

The visit ended when Habecker stabbed both Ms. Boudro and her companion, who was evacuated by helicopter to the hospital for surgery. Immediately after the incident, Habecker slashed his wrists, stabbed himself in the throat, and sat on the edge of a "garbage dumpster" until, weakened by the loss of blood, he fell into the dumpster. At trial Habecker testified that he stabbed the companion in self-defense and that he stabbed Ms. Boudro accidentally. A jury found Habecker guilty of both counts of attempted murder.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law"

encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Habecker's convictions and sentence. (Respondent's Appendix C, Exhibit 3) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Habecker's subsequent Rule 3.850 motion to vacate. (Respondent's Appendix D, Exhibit 7) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc*

*denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Habecker bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness

applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Habecker's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Appendix D, Exhibit 4)

## **EXHAUSTION AND PROCEDURAL DEFAULT**

An applicant must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Also, a petitioner must present to the federal court the same claim presented to the state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").

"Mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. at 366.

An applicant must alert the state court that he is raising a federal claim and not only a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

Finally, presenting a federal claim to a state court without the facts necessary to support the claim is insufficient. *See, e.g., Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court."). In each of the four grounds of ineffective assistance of counsel, Habecker fails to articulate which of his several attorneys was ineffective. In his post-conviction motion, however, he specified which two attorneys were allegedly ineffective for certain claims. Several assistant public defenders were assigned to

Habecker's case. After the discovery of a conflict with the public defender's office, the state court appointed James Manderscheid, Esq., to represent Habecker at trial, which was scheduled to occur in two and a half months. In his post-conviction motion, however, Habecker specified which of two attorneys was ineffective for certain claims — either Jorge Angulo, an assistant public defender, or Mr. Manderscheid. The respondent (1) opposes some of the claims to the extent Habecker failed to challenge either Mr. Angulo or Mr. Manderscheid on a particular claim before the state court and (2) as a consequence, argues that Habecker failed to exhaust those claims in state court.[2] Because the post-conviction court considered each claim as if it challenged any of his attorneys' conduct, each claim is considered exhausted.

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due

---

[2] The requirement of exhaustion precludes granting relief based on an unexhausted claim unless the respondent specifically waives the procedural default. "[B]ecause the State did not expressly waive McNair's procedural default in this case, we hold that § 2254(b)(3)['s proscription that the state must expressly waive the exhaustion requirement] applies and that McNair is procedurally barred from raising his extraneous evidence claim." *McNair v. Campbell*, 416 F.3d 1291,1305 (11th Cir. 2005), *cert. denied*, 547 U.S. 1073 (2006).

to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."); *Kennedy v. Herring*, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand, Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999).

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Habecker claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Habecker must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Habecker must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Habecker cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make *reasonable* investigations or make a *reasonable* decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a

> line of defense. Investigation (even a nonexhaustive,
> preliminary investigation) is not required for counsel reasonably
> to decline to investigate a line of defense thoroughly." *Chandler*,
> 218 F.3d at 1318. "In assessing the reasonableness of an
> attorney's investigation . . . a court must consider not only the
> quantum of evidence already known to counsel, but also
> whether the known evidence would lead a reasonable attorney
> to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at
> 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Habecker must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential

*Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

In summarily denying Habecker's motion for post-conviction relief, the state court specifically recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Appendix D, Exhibit 4 at 2) Because the state court rejected the claims based on *Strickland*, Habecker cannot meet the "contrary to" test in Section 2254(d)(1). Habecker instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

## GROUNDS FOR RELIEF

### Ground One (subpart 1)

Habecker claims that counsel failed to procure a tape-recording of Ms. Boudro's companion threatening his life. The allegations in the application are sparse. In his post-conviction motion, Habecker claimed that the companion left a voice mail message for Habecker at the Park Auto Mall, which was Habecker's place

of employment. Habecker represented that two co-workers listened to the tape and both were available to testify, and that one of the co-workers was present at trial. Habecker argued that the recording would have proved his theory of self-defense and could have been used to impeach the companion, who testified at trial that he neither called Park Auto Mall nor threatened Habecker.

The post-conviction court denied his claim after finding (1) that counsel had subpoenaed both co-workers for trial, (2) that an assistant public defender had contacted Auto Park Mall about the tape, (3) that the proposed testimony would have been cumulative and not proper evidence to prove a "propensity for violence," (4) that Habecker failed to establish that any of his counsel performed deficiently or that he was prejudiced, and (5) that the recording could have shown that Habecker had a motive for attacking the companion rather than showing that the companion had a "propensity for violence." (Respondent's Appendix D, Exhibit 4 at 3 and 11–12) Habecker fails to demonstrate that the post-conviction court's decision was an unreasonable application of *Strickland* or was an unreasonable determination of the facts in light of the evidence presented.

**Ground One (subpart 2)**

Habecker claims that counsel failed to obtain medical records and expert witnesses to corroborate the seriousness of the victims' injuries; Habecker received additional victim injury points on the sentencing guideline scoresheet because of the injuries. In his post-conviction motion, Habecker claimed that Dr. Mesidor would

have testified that the victims' injuries were minor. He argued that, if counsel had presented the additional testimony, the state prosecutor would have both reduced the victim injury points and offered him a plea based on the corrected scoresheet.

In summarily denying this ground, the post-conviction court ruled that Habecker failed to allege why the state would have amended the scoresheet before trial and speculated about why he would necessarily receive a plea agreement given that plea agreements are discretionary. Apart from the bare-boned allegations, the court emphasized that both victims testified regarding the vast extent of their injuries and photographs confirmed their testimony. Ms. Boudro was stabbed in her chest, abdomen, and forearm; her companion was stabbed in his arm and abdomen, and he was flown by helicopter to a hospital for emergency surgery to repair internal bleeding. The court determined that Habecker failed to establish that any of his counsel performed deficiently or that he was prejudiced. (Respondent's Appendix D, Exhibit 4 at 5) The post-conviction court reasonably applied *Strickland* in determining that trial counsel's performance was not deficient.

**Ground Two**

Habecker alleges that counsel failed to file a motion for an alibi defense, which he contends was based on his new girlfriend's testimony that he was in the process of moving in with her on the east coast of Florida. Habecker claimed in state court that he asked counsel to depose his new girlfriend, but she died on some unknown date before her counsel could take her statement.

The post-conviction court found no deficient conduct or prejudice suffered under the *Strickland* test (1) because there was no indication that Habecker informed counsel that his new girlfriend was dying so that counsel could apply for an order to perpetuate testimony for use at trial and (2) because Habecker testified at trial that he planned to move in with his new girlfriend on the east coast. (Respondent's Appendix D, Exhibit 4 at 4–5) The post-conviction court's decision was not an unreasonable application of *Strickland* or an unreasonable determination of the facts based on the evidence.

**Ground Three**

Habecker claims that counsel failed to obtain and to introduce into evidence his psychological evaluation performed by Dr. Zubrod before the crime and psychological evaluations performed by doctors after his post-crime attempt to commit suicide. The post-conviction court ruled that any stress and memory loss suffered by Habecker before the crime would not have caused doubt as to premeditation or a fear of endangerment caused by the companion's threat. The court reasoned that diminished capacity does not constitute an insanity defense and cited applicable Florida law. With respect to Habecker's self-inflicted injuries committed after the crime, the post-conviction court found that the exhibits offered by Habecker show only that he suffered from mild depressive disorder and that Habecker failed to show that their presentation at sentencing would have resulted in a lesser sentence. (Respondent's Appendix D, Exhibit 4 at 5–6) The post-conviction

court reasonably applied *Strickland* in determining that trial counsel's performance was not deficient.

**Ground Four (subpart 1)**

Habecker claims that counsel failed to obtain the results of the victims' breath alcohol count and the toxicologist report of the victims. He claims they were intoxicated well beyond the legal limit when he stabbed them. The post-conviction court ruled that Habecker alleged no prejudice from the victims' intoxication, even though their recollection of the events that day may have been clouded by the alcohol. Habecker admitted on the stand that he stabbed them. (Respondent's Appendix D, Exhibit 4 at 6–7 and 19–20) The post-conviction court reasonably applied *Strickland* in determining that trial counsel's performance was not deficient.

**Ground Four (subpart 2)**

Habecker claims that counsel failed to properly investigate telling evidence that the phone battery was found a great distance from his cell phone and that only his fingerprints were on his phone. According to his post-conviction motion, Habecker's fingerprints on the phone prove that he was holding the phone at the time of the incident, and the dislodged battery proves that his cell phone was knocked out of his hand. The post-conviction court opined both that Habecker's explanation for the dislodged battery is speculative and that the phone could have simply been dropped during the scuffle. (Respondent's Appendix D, Exhibit 4 at 7–8 and 13) The post-

conviction court reasonably applied *Strickland* and found that this evidence shows nothing more than that Habecker held his cell phone at some point.

**Ground Four (subpart 3)**

Habecker claims that blood was found only at Ms. Boudro's apartment, rather than the apartment of one of the witnesses who testified that he let Ms. Boudro into his apartment after she was stabbed. He argues that this evidence would have proved that the victims' testimony was inconsistent regarding where the stabbings occurred. The post-conviction court both found that Habecker showed no prejudice because he admitted that he stabbed the victims and noted that the victims might have lost most of their blood at Ms. Boudro's apartment rather than the witness's apartment. (Respondent's Appendix D, Exhibit 4 at 17–18) No deficient conduct or prejudice was shown, and the post-conviction court reasonably applied *Strickland*.

**Ground Four (subpart 4)**

Habecker claims that counsel failed to investigate the companion's prior criminal record, which should have been used as "reverse *Williams* rule evidence." Similar fact evidence of other crimes is admissible to convince the jury that some person other than the defendant committed the crime. *See State v. Savino*, 567 So. 2d 892 (Fla. 1990); *Palazzo v. State*, 754 So. 2d 731 (2DCA 2000). Habecker did not raise this issue in his post-conviction motion, which leaves the issue of reverse *Williams* rule evidence procedurally barred. In his post-conviction motion, he argued that the investigation of the companion's criminal record would have shown that he had a

propensity for violence and would have given credence to Habecker's theory of self defense. On cross-examination trial counsel succeeded in having the companion admit that he had two prior convictions. The post-conviction court found that, under Florida law, any further inquiry into the crimes would have been impermissible impeachment on collateral issues. (Respondent's Appendix D, Exhibit 4 at 3–4) The post-conviction court reasonably applied *Strickland* in determining that the evidence failed to show that trial counsel performed deficiently.

## CONCLUSION

Habecker fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recognizes, an applicant's burden under Section 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Accordingly, Habecker's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Habecker and close this case.

# DENIAL OF BOTH
# A CERTIFICATE OF APPEALABILITY
# AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Habecker is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Habecker must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Habecker is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Habecker must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 28, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE